1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Allan Lee, et al.,                          No. CV-24-00057-TUC-SHR

10                    Plaintiffs,                 **Order Dismissing First**
                                                  **Amended Complaint**
11   v.

12   PHH Mortgage,

13                    Defendant.

14

15

16           Pending before the Court is Defendant's Motion to Dismiss for Failure to State a

17   Claim (Doc. 12).  The Motion to Dismiss is fully briefed.  (Doc. 11-1, 12, 16, 17.)  For the

18   reasons set forth below, the Motion to Dismiss is granted and Plaintiffs are given leave to

19   amend certain claims.

20   **I.       Background[1]**

21           A. The 2007 Loan

22            Plaintiffs are borrowers under two deeds of trust dated January 11, 2007, with both

23   secured by real property located at 8976 South Calle Cielo Grande, Hereford, Arizona,

24   85615.  (Doc. 11-1 at 5, 65–68, 50–63.)  Lender Homecomings Financial originally

25   financed both loan amounts of $293,600 and $73,400.  (*Id.* at 5.)  Defendant, PHH

26   Mortgage, is the current servicer of both loans.  (*Id.* at 3.)

27   _____

28           [1] The Court summarizes only the pertinent facts of Plaintiffs' First Amended
     Complaint ("FAC").  (Doc. 11-1.)

B.  The Assignments

On April 6, 2007, the original lender assigned its whole beneficial interest of $293,600 to Mortgage Electronic Registration Systems, Inc. ("MERS"), as reflected in the recorded deed of trust.  (*Id.* at 127, Ex. I.)  Many years later, on July 15, 2015, MERS assigned its whole beneficial interest of $293,600 to Deutsche Bank Trust Company Americas, acting as trustee for Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-QS3, as reflected in the recorded deed of trust.  (*Id.* at 128, Ex. I.)[2]

C.  The 2016 Loan Modification Agreement

On August 11, 2016, Plaintiffs entered a Home Affordable Modification Agreement ("LMA").  (*Id.* at 6; *id.* at 79, Ex. C.)  Under the relevant terms of the LMA, the "New Principal Balance" of $325,397.95 would include a "Deferred Principal Balance" of $97,619.39, which would be non-interest-bearing principal forbearance.  (*Id.* at 82, Ex. C.)  Crucially, "on each of the first, second, and third anniversaries of 1/27/2016, the Lender [Defendant] shall reduce the Deferred Principal Balance . . . in installments equal to one-third of the Deferred Principal Reduction Amount," being $97,619.39.  (*Id.*)  Put another way, one third of the $97,619.39 deferred balance was to be waived on 1/27/2017, 1/27/2018, and 1/27/2019.

As per the 1099-C form and transaction history attached to the FAC, the total sum of the Deferred Principal Balance, $97,619.39, was deferred on 8/2/2016.  (*Id.* at 89, Ex. D; *id.* at 101–02, Ex. F.)  Thereafter, two thirds of the Deferred Principal Balance was waived on 6/28/2018 ($65,079.60), and the final one third of the Deferred Principal Balance was waived on 3/26/2019 ($32,539.79).  (*Id.* at 102, Ex. F.)  Plaintiffs, however, allege "this [waiver] did not happen."  (*Id.* at 6.)

Plaintiffs additionally allege both assignments underlying their loan are defective, and Defendant fabricated a 1099-C, misreported to the credit bureaus, "misapplied

---

[2] The Court takes judicial notice of the documents included in Plaintiffs' request for judicial notice.  (Doc. 20.)

- 2 -

payments," "charged unauthorized fees," and "issued 1098 statements [with] errors." (*See Id.* at 7–17.)

### D. Procedural Posture

On February 1, 2024, Plaintiffs filed a pro se Complaint.  (Doc. 1.)  Defendant filed a Motion to Dismiss on February 28, 2024, arguing Plaintiffs fail to state a claim for each respective cause of action.  (Doc. 7 at 16.)  Plaintiffs then filed a FAC (Doc. 8), which this Court struck for failing to comply with the local rules.  (Doc. 9.)  Plaintiffs filed a notice of filing an amended pleading and attached a new version of their FAC as an exhibit on March 20, 2024, which the Court accepted as sufficiently compliant with the local rules. (Docs. 11-1, 13.)  Defendant filed a second Motion to Dismiss on April 3, 2024 (Doc. 12), to which Plaintiffs responded (Doc. 16).  Defendant subsequently replied.  (Doc. 17.)

## II.  Legal Standard

### A. Motion to Dismiss Standard

The pleading standard for a motion to dismiss is governed by Rule 8(a), which requires "a complaint to contain 'a short and plain statement of the claim showing . . . the pleader is entitled to relief.'"  *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 763 (9th Cir. 2023) (quoting Fed. R. Civ. P. 8(a)(2)).  "Dismissal [under Rule 12(b)(6)] can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Glazer Cap. Mgmt., L.P.*, 63 F.4th at 763 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party," *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Plaskett v. Wormuth*, 18 F.4th 1072, 1083 (9th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).  However, this Court must "construe pro se filings liberally when evaluating them under [the] *Iqbal*" motion to dismiss standard.  *Hebbe v.*

1    *Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

2              B.  Judicial Notice

3         "[A] court may consider 'material which is properly submitted as part of the

4    complaint' on a motion to dismiss without converting the motion to dismiss into a motion

5    for summary judgment."  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)

6    (citation omitted).  Further, "a court may take judicial notice of 'matters of public record.'"

7    *Id.* at 689 (citation omitted).  Thus, the Court may properly consider the exhibits attached

8    to Plaintiffs' FAC, as well as the deeds of trust, as matters of public record.

9    **III.   Analysis**

10        Plaintiffs not only list 13 claims and a quiet title action but also provide numerous

11   facts in narrative form[3]  and intermittently distill those facts into discrete claims.  As a

12   threshold matter, Plaintiffs fail to relate many of the facts within this narrative to any claim

13   or cognizable legal theory.  (*See* Doc. 11-1 at 6–16.)  "[C]onfusing, distracting, ambiguous,

14   and unintelligible pleadings" are subject to dismissal.  *Schmidt v. Herrmann*, 614 F.2d

15   1221, 1224 (9th Cir. 1980); *see also Ross v. Elliott*, 952 F.2d 1399 (9th Cir. 1992)

16   (dismissing a complaint and noting the "complaint [was] a 'confused rambling narrative of

17   conclusions and charges many of which are ambiguous, redundant, vague and in some

18   respects unintelligible.'" (citation omitted)).  Thus, "[a] complaint having the factual

19   elements of a cause of action scattered throughout the complaint and not organized into a

20   'short and plain statement of the claim' may be dismissed for failure to satisfy Rule 8(a)."

21   *Linder v. Drug Enf't Admin.*, No. CV1808030PCTDGCDMF, 2018 WL 10732583, at *1

22   (D. Ariz. Sept. 18, 2018) (quoting Fed. R. Civ. P. 8(a)(2)); *see also id.* ("It is not the

23   responsibility of the Court to review a rambling narrative in an attempt to determine the

24   number and nature of a plaintiff's claims.").  Therefore, the Court will address Plaintiffs'

25   alleged facts only to the extent they are properly related to cognizable legal theories and

26   _____

27        [3] Most notably, Plaintiffs state facts alleging both assignments are defective and
     Defendant fabricated a 1099-C, misreported to the credit bureaus, "misapplied payments,"
28   "charged unauthorized fees," and "issued 1098 statements [with] errors."  (*See* Doc. 11-1
     at 7–17.)

organized into short and plain statements but will not attempt to address allegations hidden in a rambling narrative.

### A. Standing to Challenge Securitization Defects

Before reaching Plaintiffs' claims, the Court addresses Plaintiffs allegations of securitization defects and the accompanying issue of standing.  Plaintiffs allege the assignments of their mortgage are "void" because "[t]here is no assignment recorded" for one assignment, the Title Security Agency is not listed on the Note, and a subsequent assignment is signed by a representative of MERS.  (Doc 11-1 ¶ 19.)  In alleging void assignments, Plaintiffs rely on a "Comptroller's Handbook: Asset Securitization" publication and *Glaski v. Bank of America*, 160 Cal. Rptr. 3d 449 (2013), for the proposition "borrowers have standing to challenge void assignments of their loans even though they are not a party to . . . the assignment agreement."  (Doc. 11-1 at 17; Doc. 16 at 7–8, Ex. B (citation omitted).)  In its Motion under Rule 12(b)(6), Defendant asserts Plaintiffs lack standing to bring any claims challenging securitization defects, relying on *In re Mortgage Electronic Registration Systems (MERS) Litigation*, CV 10-1547-PHX-JAT, 2012 WL 932625, at *3 (D. Ariz. 2012), for the proposition "third party borrowers" are "unaffected" by an assignment and thus lack standing, and further contend Plaintiffs consented to the assignments by signing the First Position Deed of Trust.  (Doc. 12 at 5–6.)

As a preliminary matter, both parties rely on non-binding authority to assert standing,[4] and Defendant misconstrues *In re Mortgage*.[5]  Even so, the Court cannot address

---

[4] The publication cited by Plaintiffs is a "non-binding secondary source[]." *Wendel v. Travelers Cas. & Sur. Co. of Am.*, 472 F. App'x 620, 622 (9th Cir. 2012).  Further, *Glaski*'s proposition that "borrowers have standing to challenge void assignments" remains only persuasive authority.  160 Cal. Rptr. 3d at 461.

[5] While Defendant asserts *In re Mortgage* forecloses the question of standing, *In re Mortgage*'s proposition that "third-party borrowers[] are . . . unaffected by . . .[a]ssignments, and [thus] do not possess standing to assert a claim based on such" pertains to a challenge based on a voidable, not void, assignment—Plaintiffs assert the latter.  *See* 2012 WL 932625, at *3 ("Even if an assignment were voidable, an action to declare an assignment void could only be brought by someone who can demonstrate a concrete and

standing unless and until Plaintiffs provide a cognizable legal theory.  Plaintiffs have not presented a legal basis showing how the alleged facts—(1) "[t]here is no assignment recorded" for one assignment, (2) the Title Security Agency is not listed on the Note, and (3) a subsequent assignment is signed by a representative of MERS—render the assignments void under either state or federal law.  (Doc 11-1 ¶ 19.)  Thus, Plaintiffs have not tied their allegations of securitization defects to any cognizable legal theory to survive Defendant's Motion under Rule 12(b)(6), *see Balistreri*, 901 F.2d at 699, and the Court cannot determine whether Plaintiffs have standing to assert a claim under a non-cognizable legal theory.  Plaintiffs are granted leave to amend, discussed below in Section IV., to allege facts identifying the legal theory for the alleged securitization defects.[6]

### B.  Quiet Title Action Under A.R.S. § 12–1101

Plaintiffs bring a quiet title action, apparently based on their claim Defendant "violated [A.R.S. § 33–420]" by "recording false or fraudulent documents that assert an interest in, or a lien . . . against, real property."  (Doc. 11-1 at 17.)  Defendant contends Plaintiffs "lack standing to challenge a valid assignment of interest between third parties," are barred from bringing a quiet title action because Arizona law requires their mortgage to have been wholly paid prior to filing an action, and have "failed to allege . . . it would be inequitable to let the lien of the First Position Deed of Trust stand," which "is an essential element of a claim to quiet title."  (Doc. 12 at 6 (citations omitted.))

Any person may bring a quiet title action who "ha[s] or claim[s] an interest" in the property, and "against any person or the state when such person or the state claims an estate or interest in the real property which is adverse to the party bringing the action."  A.R.S. § 12-1101.  Importantly, "when parties resort to [bringing a suit to quiet title,] their cause must affirmatively present some equities," and a plaintiff "must not only show . . . the

---

particularized injury in fact that is fairly traceable to the challenged assignment.").

[6] While the Court cannot fully analyze standing because Plaintiffs fail to establish a cognizable legal theory, if Plaintiffs reassert the alleged securitization defects, they should also assert their basis for standing.

interest they seek to cancel is *adverse* to theirs, but . . . it would be *inequitable* to let it stand." *Kennedy v. Morrow*, 268 P.2d 326, 329 (Ariz. 1954) (emphasis added). Plaintiffs appear to claim the alleged falsely recorded assignments constitute an adverse property interest. (Doc. 11-1 at 18.) Even if the Court accepts this as true,[7] Plaintiffs have not alleged facts showing why "it would be inequitable to let [Defendant's assignment] stand." *Kennedy*, 268 P.2d at 329. As such, Plaintiffs fail to state a claim for quiet title.

Even aside from this deficiency, under Arizona law, "if it appears there is an unsatisfied [mortgage] balance . . . , the court will not quiet the title until and unless [the debtor] pays off such mortgage lien." *Farrell v. West*, 114 P.2d 910, 911 (Ariz. 1941); *see also Daghlan v. TBI Mortg. Co.*, No. CV-12-01415-PHX-NVW, 2013 WL 179452, at *9 (D. Ariz. Jan. 17, 2013) ("Under long established Arizona law, a plaintiff cannot bring a quiet title action under A.R.S. § 12–1101 unless he has paid off his mortgage in full."). Plaintiffs have not paid off their mortgage, (Doc. 11-1 at 6), so they are barred from bringing a quiet title action. Therefore, Plaintiffs' quiet title action is dismissed with prejudice.

### C. Count 1: Breach of Contract

Plaintiffs allege Defendant breached the LMA by failing to waive the Deferred Principal Balance of $97,619.39. (Doc. 11-1 at 21.)[8] Defendant contends the Deferred Principal Balance was wholly waived and directs the Court to the transaction history. (Doc.

---

[7] Plaintiffs appear to contend the assignment gives rise to an "adverse" interest, but the Court does not find this compelling. Additionally, this contention has been rejected by other judges in this District. *See Bergdale v. Countrywide Bank FSB,* No. CV-12-8057-PCT-GMS, 2012 WL 4120482, at *4 (D. Ariz. Sept. 18, 2012) ("[A]ssignments of deeds of trusts[ and] substitutions of beneficiary . . . do not 'create an interest' in property such that A.R.S. § 33–420 applies.").

[8] To the extent Plaintiffs claim Defendant breached the LMA by "misapplying payments to the principal, interest[,] and managing escrow" and "charg[ing] unauthorized fees and report[ing]incorrect information to the credit bureaus," (Doc. 11-1 at 21), without tying such factual allegations to the elements of their breach of contract claim, the Court will not address "factual elements of a cause of action scattered throughout [a] complaint." *Linder*, 2018 WL 10732583, at *1.

12 at 7–8.)

"[T]he elements of a breach-of-contract claim a[re]: (1) the existence of a contract; (2) breach; and (3) resulting damages." *First Am. Title Ins. Co. v. Johnson Bank*, 372 P.3d 292, 297 (Ariz. 2016); *see also Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975). Plaintiffs' allegation the Deferred Principal Balance of $97,619.39 was not waived is contradicted by the transaction history attached to Plaintiffs' FAC, which shows two waiver installments of $65,079.60 on 6/28/2018 and $32,539.79 on 3/26/2019 (totaling $97,619.39). (Doc. 11-1 at 102, Ex. F.) Thus, Plaintiffs are factually mistaken—the Deferred Principal Balance was waived in full, and there was no breach of contract.

However, although not asserted by Plaintiffs as a breach of contract, the terms of the LMA noted the Deferred Principal Balance would be waived in *three one-third* installments on the "*first, second, and third anniversaries* of 1/27/2016." (Doc. 11-1 at 82, Ex. C (emphasis added).) Taking Plaintiffs' allegations as true, Defendant failed to comply with this term because, as discussed above, the Deferred Principal Balance was waived in *two* installments[9] of $65,079.60 and $32,539.79 on 6/28/2018 and 3/26/2019, contrary to the scheduled one-third waiver installments on each of the three anniversary dates. (*Id.* at 102, Ex. F.) While these facts are sufficient to allege a breach of the LMA's terms, Plaintiffs still fail to allege damages related to this breach. The Deferred Principal Balance was non-interest bearing. (Doc. 11-1 at 82, Ex. C.) Thus, no interest accrued as result of any delay in waiving any portion of the Deferred Principal Balance. Accordingly, the Court dismisses this claim but grants leave to amend for Plaintiff to allege facts to establish damages, if any, arising from the delayed waiver contrary to the LMA's terms.

### D.  Count 2: Violation of Fair Debt Collection Practices Act

Plaintiffs allege Defendant violated the Fair Debt Collection Practices Act ("FDCPA") by "fail[ing] to properly credit . . . Plaintiff[s'] loan" regarding the Deferred Principal Balance of $97,619.39, which resulted in a misstatement of the "status of [debt]"

---

[9] The transaction history refers to each of the two waiver installments as a "Deferred Principal adjustment." (Doc. 11-1 at 102, Ex. F.)

and "amount of debt."[10]  (Doc. 11-1 at 24.)  Defendant contends the loan was properly credited.  (Doc. 12 at 9.)

Under the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," and crucially here, must not engage in "[t]he false representation of . . . the character, amount, or legal status of any debt . . . ."  15 U.S.C. § 1692e(2)(A).  "An action to enforce any liability created by [the FDCPA] may be brought . . . within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d); *see also Brown v. Transworld Sys., Inc.*, 73 F.4th 1030, 1036 (9th Cir. 2023) ("[A] violation[] of the FDCPA . . . trigger[s] the FDCPA's one-year statute of limitations.").

While Plaintiffs point to Defendant's alleged failure to forgive part of the loan as a "false representation" of the "status of [the] debt" in violation of the FDCPA (Doc. 11-1 at 24), the Deferred Principal Balance was wholly waived in two waiver installments dated 6/28/2018 and 3/26/2019 according to the transaction history.  (Doc. 11-1 at 102, Ex. F.) As such, even if a false representation occurred prior to the waiver, those claims are barred by the one-year statute of limitations.  *See* 15 U.S.C. § 1692k(d).  Further still, to the extent Plaintiffs' Response to Defendant's Motion under Rule 12(b)(6) directs the Court to specific transactions dated 8/2/2016, 6/28/2018, and 3/26/2019 (*see* Doc. 16 at 15), those claims are similarly barred by the one-year statute of limitations.   Any alleged false representation by Defendant regarding the status or amount of debt under the LMA would have necessarily preceded the waiver of the Deferred Principal Balance on 3/26/2019 and is therefore time barred.  Thus, Plaintiffs' FDCPA claim is dismissed with prejudice.

### E.  Count 3: Unfair or Deceptive Acts or Practices

Plaintiffs claim Defendant violated section 5 of the Federal Trade Commission Act ("FTCA") through exercising "unfair [and] deceptive acts," namely, where Defendant

---

[10] To the extent Plaintiffs claim Defendant "charge[d] unauthorized fees," (Doc. 11-1 at 24), without tying such factual allegation to the other elements of their FDCPA claim, the Court will not address "factual elements of a cause of action scattered throughout [a] complaint."  *Linder*, 2018 WL 10732583, at *1.

allegedly failed to forgive the whole sum of the Deferred Principal Balance, misapplied payments to the principal and interest, and fabricated the recorded assignments of the deeds of trust.  (Doc. 11-1 at 26.)  Defendant contends there is no "private right to action" under the FTCA, and even if there were, Plaintiffs' factual contentions are incorrect and they "lack standing to challenge alleged securitization defects."  (Doc. 12 at 9–10.)

The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce."  15 U.S.C. § 45(a)(1).  However, as noted by Defendant, (Doc. 12 at 9), only the Commission may seek remedies under the FTCA on behalf of affected individuals.  *See* 15 U.S.C. § 45(a)(2) ("The Commission is hereby empowered and directed to prevent [specific actors] . . . from using . . . unfair or deceptive acts or practices in or affecting commerce.").  "[T]here is no private right of action under the FTCA."  *Diessner v. Mortg. Elec. Registration Sys.*, 618 F. Supp. 2d 1184, 1191 (D. Ariz. 2009), *aff'd sub nom. Diessner v. Mortg. Elec. Registration Sys., Inc.*, 384 F. App'x 609 (9th Cir. 2010).  Thus, Plaintiffs' FTCA claim is dismissed with prejudice.

### F.  Count 4: Violation of Truth in Lending Act

Plaintiffs claim Defendant violated the Truth in Lending Act ("TILA") by "fail[ing] to comply with the disclosure requirements" of TILA "before consummating a credit transaction."  (Doc. 11-1 at 28.)  Specifically, Plaintiffs claim Defendant failed to ensure "Plaintiffs fully understood what they were getting into by signing the original loan documents" and did not furnish, for either the original 2007 loan or 2016 LMA, "required loan disclosures including the right of recission" or "copies of any disclosures . . . required under [regulation] Z[ of] TILA."  (Doc. 11-1 at 28.)  Defendant contends Plaintiffs are time barred from recovering damages under TILA (15 U.S.C. §§ 1635(f) and 1640(e)).  (Doc. 12 at 10.)

A person can bring an action under TILA within the year after the violation occurs.  15 U.S.C. § 1640(e).[11]  Thus, insofar as Plaintiffs allege TILA violations occurred because

---

[11] While § 1640(e) carves out an exception for recoupment claims, it does not apply to Plaintiffs' claim.  *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 415, 418 (1998) (explaining recoupment is a "defense arising out of some feature of the transaction upon

Defendant failed to comply with disclosure obligations related to the 2007 loan and 2016 LMA "before consummating [those] credit transaction[s]," any alleged violations occurred many years before Plaintiffs filed this action.  Thus, Plaintiffs' TILA claim is time barred and dismissed with prejudice.

### G.  Count 5: Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiffs claim Defendant violated the implied covenant of good faith and fair dealing by "refusing to forgive the $97,619.39" and engaging in a "pattern of abuse." (Doc. 11-1 at 29.)  Defendant contends Plaintiffs allege insufficient facts to state a claim.  (Doc. 12 at 11; Doc. 17 at 7.)  A claim for breach of the implied covenant of fair dealing may rest in tort or contract.  *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 29 (Ariz. 2002).  Plaintiffs assert their claim is based in contract.  (Doc. 16 at 16.)

 "Arizona law implies a covenant of good faith and fair dealing in every contract . . . [, which] prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement." *Wells Fargo Bank*, 38 P.3d at 28 (citation omitted); *see also Rawlings v. Apodaca*, 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986).  There is no breach of the implied covenant when a party abides by a contract's express terms. *See Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 434 (Ariz. Ct. App. 2002) ("[A]n implied covenant of good faith and fair dealing cannot directly contradict an express contract term."); *see also Finney v. First Tennessee Bank*, No. CV 12-1249-PHX-JAT, 2012 WL 3095052, at *2 (D. Ariz. July 30, 2012) ("[A] party cannot be held liable for breaching the covenant of good faith and fair dealing by acting in

---

which the plaintiff's action is grounded," (citation omitted), and "the effect of the [§ 1640(e)] 1-year limitation provision on damages actions is expressly deflected from recoupment claims"); *see also Aetna Fin. Co. v. Pasquali*, 626 P.2d 1103, 1105 (Ariz. Ct. App. 1981) (holding recoupment-claim-exception to § 1640(e) one-year statute of limitations inapplicable where the plaintiff's "claim [wa]s predicated upon a specifically imposed statutory penalty which [wa]s an extrinsic by-product of the loan transaction and [was] not dependent upon [the plaintiff's or defendant's] contractual obligations").

accordance with the express terms of the contract.").

Plaintiffs fail to allege Defendant's conduct "injure[d] the right of [Plaintiff] to receive the benefits of the agreement." *Amadeo*, 290 F.3d at 1158. While Plaintiffs state Defendant "refus[ed] to forgive the $97,619.39 when they breached the contract," as explained, the Deferred Principal Balance was wholly forgiven by Defendant. (Doc. 11-1 at 29; *id.* at 102, Ex. F.) Thus, the facts asserted by Plaintiffs undercut the legal theory of their claim for breach of the implied covenant of good faith and fair dealing. Accordingly, where Plaintiffs' breach of contract claim fails as a matter of law, their breach of implied covenant claim similarly fails. *BOKF, NA v. First Am. Title Ins. Co.*, No. CV-16-02630-PHX-SPL, 2017 WL 11631008, at *4 (D. Ariz. Dec. 11, 2017).

Further, while Plaintiffs cite "the payment history, the defective assignments," a "fabricated 1099-C, the misinformation provided to the credit bureaus, and wrong 1098's" as a "pattern of abuse" constituting a breach of the implied covenant, (Doc. 11-1 at 29), Plaintiffs fail to allege sufficient facts showing these factual contentions "injure[d] the right of [Plaintiff] to receive the benefits of the agreement." *Amadeo*, 290 F.3d at 1158. Thus, Plaintiffs' claim for a breach of the implied covenant of fair dealing is dismissed without prejudice as to the factual contentions concerning Defendant's "pattern of abuse."

### H. Count 6: Infliction of Emotional Distress

Plaintiffs claim "to suffer emotional distress," namely, depression and hospitalization, resulting from the allegedly incorrect status of their debt and Defendant's failure "to forgive the $97,619.39 and refusal to provide a complete payment history." (Doc. 11-1 at 30.) Defendant contends Plaintiffs' factual contentions "cannot form the basis [of an infliction of emotional distress claim] for which relief can be granted." (Doc. 12 at 12.) Plaintiffs do not state whether their claim for infliction of emotional distress is based on a theory of *intent* ("IIED") or *negligence* ("NIED"). Regardless, the claim fails as a matter of law under both theories because Plaintiffs do not allege sufficient facts to establish a claim under either theory.

The elements of an IIED claim in Arizona are as follows: "first, the conduct by the

defendant must be 'extreme' and 'outrageous'; second, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty . . . such distress will result from his conduct; and third, severe emotional distress must indeed occur as a result of defendant's conduct." *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987) (emphasis omitted). Plaintiffs' IIED claim fails because they have not alleged Defendant's conduct was "extreme and outrageous." *See id.* ("[T]he conduct [must] ha[ve] been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community . . . ." (citation omitted); *see also Kassa v. BP W. Coast Prod., LLC*, No. C-08-02725 RMW, 2008 WL 3494677, at *8 (N.D. Cal. Aug. 12, 2008) ("'[C]ivilized community' tolerates run-of-the-mill breaches of contract; such conduct is not sufficiently 'extreme and outrageous' for a claim of intentional infliction of emotional distress."); *Dougherty v. Bank of Am.*, N.A., No. 215CV01226TLNCKD, 2018 WL 1573312, at *5 (E.D. Cal. Mar. 30, 2018) ("Defendant's sale of Plaintiffs' mortgage to another lender after the alleged modification agreement . . . does not constitute extreme and outrageous conduct.").

Similarly, Plaintiffs have not alleged facts to meet the elements of an NIED claim. "Negligent infliction of emotional distress requires . . . the plaintiff witness an injury to a closely related person, suffer mental anguish that manifests itself as a physical injury, and be within the zone of danger so as to be subject to an unreasonable risk of bodily harm created by the defendant." *Guerra v. State*, 348 P.3d 423, 426 (2015); *see also Keck v. Jackson*, 593 P.2d 668, 669 (Ariz. 1979) ("[T]he shock or mental anguish of the plaintiff [claiming NIED] must be manifested as a physical injury."). Thus, Plaintiffs' NIED claim fails because they have not alleged to have "witness[ed] an injury to a closely related person, suffer[ed] . . . a physical injury," or been "within the zone of danger . . . [and] subject[ed] to an unreasonable risk of bodily harm" caused by Defendant. *Guerra*, 348 P.3d at 426. Further, granting leave to amend would be futile where the underlying contractual dispute and accompanying claims bear no resemblance to a claim requiring physical injury. Accordingly, Plaintiffs' infliction of emotional distress claim is dismissed

with prejudice.

## I.   Count 7: Violation of Fair Credit Reporting Act

Plaintiffs claim Defendant violated the Fair Credit Reporting Act ("FCRA") by "not correctly report[ing] statement data to the credit bureaus."  (Doc. 11-1 at 31.)  Defendant contends Plaintiffs fails to allege facts showing they complied with the statutory notice requirement under the FCRA or that Defendant violated the FCRA.  (Doc. 12 at 13.)

Under the FCRA:

> Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency *receives notice of a dispute from any consumer* . . . , the agency shall provide notification of the dispute to any person who provided any item of information in dispute . . . .

15 U.S.C. § 1681i(2)(A) (emphasis added). Only after this procedure does the misreporting person have an obligation to correct the "accuracy of any information provided by [the consumer] to a consumer reporting agency."  *See* 15 U.S.C. § 1681s-2(b)(1).  Further:

> A person shall not furnish information relating to a consumer to any consumer reporting agency if . . . *the person has been notified by the consumer*, at the address specified by the person for such notices, that specific information is inaccurate; and . . . the information is, in fact, inaccurate.

15 U.S.C. § 1681s-2(a)(B).  Plaintiffs do not allege they gave notice to the credit bureau or Defendant regarding the alleged misreported information, and Defendant had no duty to correct or stop reporting the alleged misinformation absent sufficient notice.   Thus, Plaintiffs' FCRA claim is dismissed without prejudice and Plaintiffs may amend their complaint as to this claim if they can allege they gave the requisite notice.

## J.   Count 8: Violation of 12 CFR 1024 Regulation X

Plaintiffs cite § 1024.40, the "continuity of contact" provision of the Real Estate Settlement Procedures Act (discussed below in Section K.), alleging Defendant violated § 1024.40 by failing to provide both "a complete payment history" and "copies of all original loan documents," as well as by failing to "explain why the [Deferred Principal Balance was not] forgiven[]." (Doc. 11-1 at 33.)  Defendant appears to assert the factual allegations Plaintiffs allege do not rise to a violation of § 1024.40, and as such, contends

1   Plaintiffs allege insufficient facts to state a claim.  (Doc. 12 at 14.)

2        First, Plaintiffs contend Defendant's failure to provide "copies of all original loan

3   documents" and to explain why the Deferred Principal Balance was not forgiven violate

4   § 1024.40.  (Doc. 11-1 at 33.)  Neither of these factual contentions state a cognizable claim

5   under § 1024.40 because this RESPA provision does not obligate a servicer to furnish "all

6   original loan documents" or provide an explanation for a disputed transaction.  *See*

7   *generally* 12 C.F.R. § 1024.40.

8        Second, Plaintiffs contend Defendant further violated § 1024.40 by failing to

9   provide "a complete payment history."  (Doc. 11-1 at 32.)  Section 1024.40 *does* instruct a

10   servicer to "maintain policies and procedures reasonably designed to ensure . . .  servicer

11   personnel . . . .  [r]etrieve, in a timely manner . . . [a] complete record of the borrower's

12   payment history."  § 1024.40(b)(2)(i).  While Plaintiffs claim "Defendant . . . has not been

13   able to provide a complete payment history," their allegation fails to state facts showing

14   Defendant's "policies and procedures" were "[un]reasonably designed" regarding timely

15   retrieval of a "borrower's payment history."  § 1024.40.  Nor do Plaintiffs allege facts

16   showing Plaintiffs *requested* Defendant provide a complete payment history, and *on what*

17   *date*, to determine whether Defendants failed to act in a "timely manner."  *Id.*  Thus,

18   Plaintiffs have not alleged sufficient facts to establish Defendant failed to timely retrieve

19   Plaintiffs' complete payment history, and their Regulation X claim is dismissed without

20   prejudice.  The Court does not view this claim as futile because it can envision some set of

21   facts Plaintiffs could allege to support it.  Therefore, if Plaintiffs choose to amend their

22   complaint and include this claim in the amended complaint, they must allege facts showing

23   how Defendant's policies were unreasonably designed and how Defendant failed to act in

24   a timely manner.

25        K. Count 9: Violation of Real Estate Settlement Procedures Act

26        Plaintiffs claim Defendant violated the Real Estate Settlement Procedures Act

27   ("RESPA") by "fail[ing] to respond" to "Plaintiffs mailed qualified written request," which

28   Plaintiffs cite as exhibit G of the FAC.  (Doc. 11-1 at 34.)  Defendant contends Plaintiffs

did not comply with the "qualified written request" requirement of RESPA and also fail to allege actual damages as statutorily required.  (Doc. 12 at 14–15.)

RESPA "provides an action for damages against mortgage-loan servicers who fail to respond to certain types of inquiries from borrowers." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 663 (9th Cir. 2012).  The mortgage-loan servicer's "duty to respond," however, is only triggered by a "qualified written request." *Id.* at 665.  According to the regulatory scheme promulgated under RESPA, "[a] qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with all requirements applicable to a notice of error with respect to such qualified written request." 12 C.F.R. § 1024.35(a).  "Qualified written request means a written correspondence from the borrower to the servicer that includes, or otherwise enables the servicer to identify, the name and account of the borrower," and additionally, "either: (1) States the reasons the borrower believes the account is in error; or (2) Provides sufficient detail to the servicer regarding information relating to the servicing of the mortgage loan sought by the borrower." § 1024.31.

Plaintiffs refer to exhibit G as their qualified written request sent to Defendant. (Doc. 11-1 at 34.)  However, exhibit G is not a "qualified written request" because it contains no identifiable information concerning Plaintiffs "name and account" and further fails to state "the reasons the borrower believes the account is in error." § 1024.31.  While Plaintiffs allude to other letters sent to and ignored by Defendant, no further facts are alleged to establish such letters were "qualified written requests" to trigger Defendant's duty under RESPA.  (Doc. 11-1 at 35.)  Because Plaintiffs fail to allege facts establishing a qualified written request was sent to Defendant and where the cited exhibit contravenes such a factual finding, the Court will dismiss their RESPA claim.  However, because it is not impossible to imagine Plaintiffs did in fact send a qualified written request, the Court will dismiss this claim without prejudice.[12]

---

[12] While Defendant additionally contends 12 U.S.C. § 2605(f) "requires a party to plead the actual damage caused from a violation of [RESPA]" and "Plaintiffs have not and cannot allege actual damage[s]," (Doc. 12 at 15), § 2605(f) does not obligate a borrower to

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

L.  <u>Count 10: Harmed by Predatory Loans</u>

Plaintiffs claim Defendant violated the Consumer Financial Protection Bureau's ("CFPB") Mortgage Guidelines by way of its "predatory" loan.  (Doc. 11-1 at 36.) Plaintiffs contend the loan is predatory because they "will [not] be able to pay [it] off . . . even if they follow the [terms]."  (*Id.* at 37.)  Those terms include a "balloon provision" which they claim makes "it a predatory high cost home loan and not a 'qualified mortgage.'"  (*Id.* at 38.)  Defendant asserts Plaintiffs cannot rely upon the CFPB's Mortgage Guidelines to establish a cognizable legal theory.  (Doc. 12 at 15.)

While Plaintiffs quote the CFPB's Mortgage Guidelines, which are a "non-binding secondary source[]," *Wendel*, 472 F. App'x at 622, they appear to also be invoking 15 U.S.C. § 1639c.  Section 1639c contains analogous language to the Mortgage Guidelines. *Compare* 15 U.S.C. § 1639c(a)(1) ("[N]o creditor may make a residential mortgage loan unless the creditor makes a reasonable and good faith determination based on verified and documented information that, at the time the loan is consummated, the consumer has a reasonable ability to repay the loan, according to its terms"), *with* (Doc. 11-1 at 36 ("[A] lender 'shall not make a mortgage loan unless the creditor makes a reasonable and good faith determination at or before consummation that the consumer will have a reasonable ability to repay the loan according to its terms.'" (quoting CFPB Mortgage Servicing Guidelines)).)

Section 1639c is a provision of TILA, discussed above in section F., and any claims brought under this section are subject to TILA's statute of limitations.  *See* § 1640(e) ("Any action under this section with respect to any violation of section . . . 1639c of this title may be brought . . . before the end of the 3-year period beginning on the date of the occurrence

---

expressly identify their damages, but instead, only instructs the sum of damages that is recoverable.  *See* § 2605(f)(1)(A)-(B).  Thus, Plaintiffs' failure to expressly indicate the sum of their damages as a result of the alleged RESPA violation is not a bar to recovery. The lack of actual damages is also not a bar to recovery, where a borrower may recover "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." *Id.* § 2605(f)(1)(B).

of the violation.").[13]  Far more than three years have passed since Plaintiffs entered the 2007 loan and 2016 LMA.  Thus, Plaintiffs' § 1639c claim—to the extent it was raised—is dismissed as time barred.  Because leave to amend would be futile, i.e. no set of facts could render the complaint timely filed, the Court will dismiss this claim with prejudice.

M. Count 11: Slander of Title

Plaintiffs claim slander of title by alleging Defendant fabricated "deeds of trust and assignments" and reported these fabricated documents as "false information" to credit bureaus.  (Doc. 11-1 at 39.)  Defendant contends "Plaintiffs lack standing to challenge alleged securitization defects and any documents that derive from them" and further fail to allege facts sufficient to satisfy "the elements of a slander of title claim."  (Doc. 12 at 16.)

"Slander of title requires proof of 'the uttering and publication of the slanderous words by the defendant, the falsity of the words, malice and special damages.'"  *SWC Baseline & Crismon Invs., L.L.C. v. Augusta Ranch Ltd. P'ship*, 265 P.3d 1070, 1086 (Ariz. App. 2011) (citation omitted).  A showing of "malice" requires a defendant to have acted "from improper motives or without reasonable belief in the efficacy of the claim."  *Barnett v. Hitching Post Lodge, Inc.*, 421 P.2d 507, 512 (Ariz. 1966).

Plaintiffs allege Defendant acted with "malic[e] because [Defendant] had no intention of forgiving" the Deferred Principal Balance.  (Doc. 11-1 at 38.)  This factual contention is contradicted by the transaction history, which records the Deferred Principal Balance as having been swiftly deferred on 8/2/2016—one week after the LMA was signed by Plaintiffs (7/25/2016)—and thereafter wholly forgiven through two waiver installments on 6/28/2018 and 3/26/2019.  (Doc. 11-1 at 86, Ex. C; *id.* at 101–02, Ex. F.)  Thus, the record indicates Defendant intended to forgive, and did so forgive, the Deferred Principal Balance, with nothing in the complaint supporting the contrary.  Thus, Plaintiffs fail to allege facts showing malice.  *See Buchanan v. Ghandi*, No. CV-22-01482-PHX-SMB, 2024 WL 1240192, at *5 (D. Ariz. Mar. 22, 2024), *reconsideration denied*, No. CV-22-

---

[13] Plaintiffs' claim under § 1639c also fails to satisfy the recoupment exception to TILA's one-year statute of limitations discussed above in footnote 10.

01482-PHX-SMB, 2024 WL 2153519 (D. Ariz. May 14, 2024) ("[B]lanket, unsupported and conclusory allegation[s] of ill-will [are] nowhere close to meeting the 'malice' element to make a claim for slander of title."). Nor have Plaintiffs alleged facts to show special damages. They claim to have "suffered a loss of $97,619.39 and [to have been damaged] by making payments to a loan with an incorrect principal balance." (Doc. 11-1 at 39.) Their own factual assertions undercut this claim because the $97,619.39 was deferred from the principal balance and thereafter wholly waived. (Doc. 11-1 at 39; *id.* at 101–02, Ex. F.) Thus, based on the transaction history, there is no set of facts by which Plaintiffs could succeed on this claim. Accordingly, leave to amend would be futile for this claim, and Plaintiffs' slander of title claim is dismissed with prejudice.

### N. Count 12: Fraudulent Misrepresentation

The gravamen of Plaintiffs' fraudulent misrepresentation claim is the allegation Defendant falsely "stated part of the loan would be forgiven," namely, the Deferred Principal Balance, and falsely stated "the loan modification would be refinanced" thereafter. (Doc. 11-1 at 41.)[14] Defendant contends Plaintiffs fail to allege "who represented [the LMA would be refinanced] or when," and further, the express terms of the LMA state Defendant had "no obligation to refinance." (Doc. 12 at 17 (citation omitted).)

To successfully claim fraudulent misrepresentation, Plaintiffs must allege sufficient facts to support the following elements: "(1) A representation; (2) its *falsity*; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated," and "(6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) his consequent and proximate injury." *Carrel v. Lux*, 420 P.2d 564, 568 (Ariz. 1966) (emphasis added); *see also Frank Lloyd Wright Found. v. Kroeter*, 697 F. Supp. 2d 1118, 1125 (D. Ariz. 2010).

---

[14] To the extent Plaintiffs claim their signatures were forged, (Doc. 11-1 at 40), without tying this factual allegation to the elements of their fraudulent misrepresentation claim, the Court will not address "factual elements of a cause of action scattered throughout [a] complaint." *Linder*, 2018 WL 10732583, at *1.

First, Defendant's representation regarding the waiver of the Deferred Principal Balance was not *false*—the $97,619.39 total sum was waived according to the transaction history. (Doc. 11-1 at 102, Ex. F.)   Second, while Plaintiffs also allege Defendant misrepresented "the loan modification would be refinanced," the LMA states in all-caps as a preface to its terms the "loan servicer has no obligation to refinance this loan or make you a new loan on the maturity date." (Doc. 11-1 at 41, 80.)   Thus, while Plaintiffs assert they "were told if they signed the [LMA] part of the loan would be forgiven allowing them to refinance the loan before the balloon date," (Doc. 11-1 at 41), the express terms of the LMA put Plaintiffs on notice of the fact Defendant had "no [contractual] obligation to refinance t[he] loan . . . ." (*Id*. at 80.)   As such, Plaintiffs were not and could not be ignorant of the falsity of any alleged misrepresentation of refinancing options under the LMA.   Since neither factual allegation asserted by Plaintiffs satisfies the elements for fraudulent misrepresentation and no set of facts would support this claim, their claim for fraudulent misrepresentation is dismissed with prejudice.

## O.   Count 13: Unjust Enrichment

Plaintiffs claim "Defendant was unjustly enriched by refusing to forgive the $97,619.39," i.e. the Deferred Principal Balance subject to waiver.   (Doc. 11-1 at 43.) Defendant asserts "[t]here is no factual basis to support Plaintiffs' allegation" because the Deferred Principal Balance was waived.   (*See* Doc. 12 at 17–18.)

"A person who has been unjustly enriched at the expense of another is required to make restitution to the other."   *Murdock-Bryant Const., Inc. v. Pearson*, 703 P.2d 1197, 1202 (1985) (citation omitted).   Thus, an unjust enrichment claim will succeed "whenever the court finds . . . the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to make compensation for benefits received."   *State v. Arizona Pension Plan.*, 739 P.2d 1373, 1375 (Ariz. 1987) (citation and internal quotation marks omitted).

Ultimately, Defendant was not "unjustly enriched at the expense of" Plaintiffs, *Murdock-Bryant Const., Inc.*, 703 P.2d at 1202, because the Deferred Principal Balance

was waived in full according to the transaction history.  (Doc. 11-1 at 102, Ex. F.)  Further, while Plaintiffs "*believe . . . they will uncover additional amounts of unjust enrichment*" upon discovery, (Doc. 11-1 at 43) (emphasis added), such an allegation is insufficient and unsupported by any facts.  There is no set of facts sufficient to support Plaintiffs' theory based on the information provided, so granting leave to amend for this claim would be futile.  Thus, Plaintiffs unjust enrichment claim is dismissed with prejudice and without leave to amend.

### IV.    Leave to Amend

"[I]n dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines . . . the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir.1995)); *see also Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010) ("Dismissal without leave to amend is improper unless it is clear . . . the complaint could not be saved by any amendment." (citation omitted)).

As more fully detailed throughout this Order, Plaintiffs are given leave to amend the following claims: their allegation of securitization defects, breach of contract claim as to Defendant's failure to comply with the dates of waiver, breach of the implied covenant of good faith and fair dealing claim as to Defendant's "pattern of abuse," FCRA Claim, Regulation X Claim, and RESPA Claim (Counts 1, 5, and 7–9 of Plaintiffs' FAC).

### V.    Conclusion

**IT IS ORDERED** Defendant's Motion to Dismiss (Doc. 12) is **GRANTED**.

**IT IS FURTHER ORDERED** Plaintiffs' Quiet Title Action, FDCPA Claim, FTCA Claim, TILA Claim, Infliction of Emotional Distress Claim, Harmed by Predatory Loans Claim, Slander of Title Claim, Fraudulent Misrepresentation Claim, and Unjust Enrichment Claim (Counts 2–4, 6, and 10–13 of Plaintiffs' FAC) are **DISMISSED with prejudice.**

1    **IT IS FURTHER ORDERED** Plaintiffs' allegation of securitization defects,

2    Breach of Contract Claim as to Defendant's failure to comply with the dates of waiver,

3    Breach of Implied Covenant of Fair Dealing Claim as to Defendant's "pattern of abuse,"

4    FCRA Claim, Regulation X Claim, and RESPA Claim (Counts 1, 5, and 7–9 of Plaintiffs'

5    FAC) are **DISMISSED without prejudice and with leave to amend.**

6    **IT IS FURTHER ORDERED** Plaintiffs may file a Second Amended Complaint

7    no later than **Monday, October 21, 2024**.  If Plaintiffs choose to do so, they must organize

8    their facts into short and plain statements (not narrative form) and must limit their

9    complaint to the following claims: Breach of Contract Claim as to Defendant's failure to

10   comply with the dates of waiver, Breach of Implied Covenant of Fair Dealing Claim as to

11   Defendant's "pattern of abuse," FCRA Claim, Regulation X Claim, and RESPA Claim

12   (Counts 1, 5, and 7–9 of Plaintiffs' FAC).

13   **IT IS FURTHER ORDERED** Defendant's first Motion to Dismiss (Doc. 7) is

14   **DENIED as moot**.

15   Dated this 30th day of September, 2024.

16

17

18   Honorable Scott H. Rash
     United States District Judge

19

20

21

22

23

24

25

26

27

28